*Decision will be entered under Rule 50.*

DAVID M. HEYMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97827. Promulgated July 17, 1941.

*Lawrence A. Baker, Esq.*, for the petitioner.
*B. M. Brodsky, Esq.*, for the respondent.

1012

## OPINION.

VAN FOSSAN: The respondent held the trust of March 14, 1931, in favor of Ruth S. Heyman (hereinafter called the wife's trust) to be revocable and the income therefrom taxable to the grantor under the provisions of section 166 of the Revenue Acts of 1934 and 1936. Under appropriate pleadings, he now asserts that such income is also taxable under the provisions of sections 167 and 22 (a) of those acts. He further contends that the income from the three trusts, created July 21, 1933, for the benefit of his sons (hereinafter called the children's trusts), is likewise taxable under sections 22 (a) and 167 of those acts. The petitioner denies the taxability of the income from all trusts under any statutory provision.

Addressing ourselves to the wife's trust, we are at once impressed by the breadth of control by the donor trustee and the absence of the limitations usually found in trust instruments. The situation

is quite similar to that present in *Chandler* v. *Commissioner*, 119 Fed. (2d) 623. There the court said:

The first question which arises is whether the income from the trust securities is taxable to Chandler. The Board held that it was. Its decision was grounded upon the second paragraph of article seventh of the trust agreement, which is as follows:

"During the lifetime of Grantor, Trustee shall make such sale, exchange or other disposition either to Grantor or to a third party or third parties designated by him of all or any part of the Trust Fund and for such considerations and upon such terms as to credit or otherwise as Grantor shall at any one time or from time to time direct. Trustee shall also acquire by purchase, exchange or otherwise such real or personal property for such considerations and either from Grantor or from such third party or third parties as Grantor may at any one time or from time to time direct. Grantor may be personally interested in the sale, exchange or other disposition of any part of the Trust Fund and/or in the purchase, exchange or other acquisition of real and/or of personal property for the Trust Fund. Trustee shall at all times and forever be freed from any and all liability and responsibility for acting in accordance with such directions of Grantor."

The Board found that, Chandler could so exercise the power reserved (by the provisions just quoted) to himself as grantor as to direct a sale of trust securities to himself at less than their real value and to that extent revest title in the trust corpus in himself.

Commenting upon article seventh of the trust instrument, the court further said:

In the present case there can be no doubt that the power to control reserved by Chandler was for his own benefit. In addition to broad powers of directing investments by the trustee, such as were present in the trust instrument in *Carrier* v. *Carrier*, supra, Chandler reserved to himself the right to sell to or buy from the trust estate at his own price and to direct the disposition to himself (other than by way of sale or exchange) of all or any part of the trust fund for such consideration and upon such terms as he might direct. We think that the reservation by the settlor of the power to deal with the trust assets for his own benefit is irreconcilable with the fundamental principle underlying all fiduciary relationships that the fiduciary must act solely in the interest of the cestui que trust and, therefore, may not have personal dealings with the trust property. Restatement, Trusts, § 170 and comments thereto. As owner of the assets Chandler, of course, had the right to reserve such a power. His doing so clearly indicates that he did not intend to impose upon himself fiduciary restraints enforcible by the trust beneficiaries. We think that the Board was entirely justified in construing the power as a reservation by the settlor of the right to revoke the trust.

In the wife's trust instrument we find that paragraphs 3, 8, and 14 contain similar, if not broader, powers of control over the trust corpus as compared with those in the *Chandler* case. In paragraph 3 the grantor was under "no restrictions whatever" with respect to the investment and reinvestment of the trust estate. He was granted "power without accountability" for what might "otherwise be con-

sidered negligence" and permitted to make "speculations in any form" for the trust estate. In paragraph 8 the trustees were protected in carrying on transactions authorized by the trust agreement and were not liable for depreciation or loss "by reason of any sales, investments or reinvestments so made." Under paragraph 14 the donor may purchase investments from the trust estate for himself or his firm and sell them to himself and his firm. All transactions with his firm are subject to commissions.

These reservations and grants are couched in the broadest language and permit the petitioner to set any price he sees fit on any part or all of the trust corpus. As in the *Chandler* case, he might fix the amount of the sale at a nominal figure, upon terms amounting substantially to a gift or sell at a bargain price without restriction or accountability. Likewise, an excessive purchase price for assets bought from himself for the trust would result, in effect, in an immediate cash distribution from the trust corpus, measured by the difference between the amount received and the fair market value of the purchased asset. Thus the power to revest in the grantor any part of the corpus is clearly vested in him by the terms of the trust instrument.

It is sufficient to decide that the income from the wife's trust during the years before us was taxable to the donor under the provisions of section 166, but we are constrained to add that under the circumstances set forth in our findings of fact the income is also taxable to him under section 22 (a). The principles announced in *Helvering* v. *Clifford*, 309 U. S. 331, apply here. In that case the trust was created for a term of years, but the absence of a specific term is immaterial. *Altmaier* v. *Commissioner*, 116 Fed. (2d) 162; *White* v. *Higgins*, 116 Fed. (2d) 312; *Commissioner* v. *Berolzheimer*, 116 Fed. (2d) 628; and *Morton Stein*, 41 B. T. A. 994. No single factor need be pointed out as determinative of taxability under section 22 (a), *Helvering* v. *Clifford*, *supra*, but the entire situation must be viewed in order to evaluate the purpose and use of the trust as a means of retaining or alienating the donor's incidents of ownership over the corpus or his constitutent rights to and privileges in its dominion.

In the case at bar we find a marked similarity of fact to the *Clifford* case. In both cases the grantor was the trustee, the wife was the beneficiary (here the children were possible beneficiaries upon the happening of certain events), and income was to be paid primarily to the wife. In neither case was there specific power of revocation, but here the grantor may revoke with the consent of his wife while they live together as man and wife, and alone thereafter, and the grantor may renounce or modify his power of revocation. There is no definition or amplification of the word "modify" and,

consequently, we can not say what effect a modification might have on such power. Upon the termination of the Clifford trust the undistributed and accrued income would belong to the wife. Upon the revocation of the Heyman trust the undistributed income would go to the grantor.

Further powers reserved to the grantor tightened his control over the trust estate. The grantor has exercised personal direction and control over the activities of the trust fund. He has been the sole trustee of the trust. He has invested the funds in his wife's general account (which included the income from the trust) and has used that account in the purchase of additional investments selected by him in his sole discretion. He has paid out of his own funds the living expenses of his family and himself, averaging about $100,000 a year.

In the face of this brief resumé of the salient facts it can not be said that the wife's trust was not the usual "family trust", the income from which is taxable to the grantor under section 22 (a).

As to the children's trusts, the respondent argues that the trusts were created as an integral part of the grantor's plan to retain control over the property transferred in trust for the benefit of his wife and children and to deal with it as if it were still his own. He cites the grantor's broad powers to control the corpus as equivalent to ownership. He contends that the grantor is permitted to deal with the trusts in any way he chooses and may profit therefrom personally as he sees fit. He says "the powers are broad enough to enable the petitioner to milk the trust dry or apply them to any undertaking in which he himself would stand to benefit through the use of trust funds" and thus he may violate the fundamental concept of a trust.

We see no escape from the conclusion respondent asks when we apply to the children's trusts the same line of reasoning as has been applied to the wife's trust. The facts that petitioner has not availed himself of the right to lend to or borrow from the trust; that he has not maintained margin accounts with the funds; that he has accumulated all gains and profits for the children's use and benefit and otherwise provided for their education, maintenance, and support, are not determinative. Petitioner reserved the power to use the funds of the children's trusts in much the same fashion as the wife's trust. The possession of the power is determinative, not the fortuitous manner of its use. Petitioner retained such control over the trust corpus as to bring the trust income within the broad scope of section 22 (a). *Chandler* v. *Commissioner, supra; Helvering* v. *Clifford, supra.*

Reviewed by the Board.

*Decision will be entered under Rule 50.*